## CENTRAL PARKING SYSTEM INC.
### EMPLOYEE WARNING NOTICE

Employee's Name ALEXANDER JONES _____ Union Local _____

Location MAINTENANCE #5437 _____ Date of Violation 5-30-00

**I. MISCONDUCT**
- ☐ Leave location without permission
- ☐ Failure to follow time card procedures
- ☐ Unauthorized persons in work area
- ☐ Loud, vulgar and/or abusive language
- ☐ Discourteous to customers
- ☐ Evidence of alcoholic drinking or drug use
- ☐ Destruction of company property
- ☐ Sleeping on the job
- ☐ Failure to be in complete uniform
- ☐ Other (see explanation)

**II. INSUBORDINATION**
- ☐ Failure to follow instructions
- ☒ Refused to perform job function

**III. POOR PERFORMANCE**
- ☐ Repeated cashier errors
- ☐ Excessive cash shortages
- ☐ Unsatisfactory personal grooming
- ☐ Poor attitude

**IV. ATTENDANCE**
- ☐ Lateness   ☐ Absenteeism   ☐ Called in too late   ☐ No call - No show

**V. SECURITY**
- ☐ Failure to use key locks
- ☐ Leaving keys in "Front line cars"
- ☐ Violating location security procedures
- ☐ Operating vehicle in a dangerous manner

**VI. TICKET/AUDIT INTEGRITY**
- ☐ Misuse of tickets
- ☐ Tickets incomplete
- ☐ Unmarked vehicles
- ☐ Repeated pricing errors
- ☐ Not issuing claim checks
- ☐ Not issuing receipts

**VII. INHIBITING BUSINESS**
- ☐ Full sign out with space available
- ☐ Blocking entrances
- ☐ Refusing to accept vehicles
- ☐ Parking cars in a disorderly manner
- ☐ Location cleanliness

FILED
MAY 2 7 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

05 1072

**VIII. EXPLANATION**
THIS WILL SERVE AS A VERBAL WARNING: ALEX WAS TOLD PERFORM MAINT DUTIES AT LOC's #5044 #5410 #5440 AND #5601 IN ADDITION TO PREVIOUS DUTIES AT #5 AND #5437. FOR THIS WE HAVE OFFERED A RATE INCREASE OF .50/HR. ALEX REFUSES TO CLEAN THESE LOCATIONS

**IV. COURSE OF ACTION TAKEN**
THIS IS A VERBAL WARNING THE MAINTENANCE WORK IN THESE LOCATIONS MUST BE DONE.

Signature of Supervisor _William J Ze_

I have read and understood the above warning and acknowledge that I have received a copy of this notice.

Employee Signature REFUSED TO SIGN     WITNESS _____ Date and Time Stamp _____

White — Personnel File;   Yellow — Employee;   Pink — Union



# CENTRAL PARKING SYSTEM INC.
## EMPLOYEE WARNING NOTICE

Employee's Name __ALEXANDER JONES__    Union Local _____

Location __#5437__    Date of Violation __6-19-00__

### I. MISCONDUCT
- ☐ Leave location without permission
- ☐ Failure to follow time card procedures
- ☐ Unauthorized persons in work area
- ☐ Loud, vulgar and/or abusive language
- ☐ Discourteous to customers
- ☐ Evidence of alcoholic drinking or drug use
- ☐ Destruction of company property
- ☐ Sleeping on the job
- ☐ Failure to be in complete uniform
- ☐ Other (see explanation)

### II. INSUBORDINATION
- ☐ Failure to follow instructions
- ☑ Refused to perform job function

### III. POOR PERFORMANCE
- ☐ Repeated cashier errors
- ☐ Excessive cash shortages
- ☐ Unsatisfactory personal grooming
- ☐ Poor attitude

### IV. ATTENDANCE
- ☐ Lateness
- ☐ Absenteism
- ☐ Called in too late
- ☐ No call - No show

### V. SECURITY
- ☐ Failure to use key locks
- ☐ Leaving keys in "Front line cars"
- ☐ Violating location security procedures
- ☐ Operating vehicle in a dangeorus manner

### VI. TICKET/AUDIT INTEGRITY
- ☐ Misuse of tickets
- ☐ Tickets incomplete
- ☐ Unmarked vehicles
- ☐ Repeated pricing errors
- ☐ Not issuing claim checks
- ☐ Not issuing receipts

### VII. INHIBITING BUSINESS
- ☐ Full sign out with space available
- ☐ Blocking entrances
- ☐ Refusing to accept vehicles
- ☐ Parking cars in a disorderly manner
- ☐ Location cleanliness

### VIII. EXPLANATION
ON MAY 30th I SPOKE WITH ALEX ABOUT PERFORMING MAINTENANCE DUTIES AT LOCATIONS #5044 #5410 #5440 AND #5601 HE STILL HAS NOT CLEANED THESE LOCATIONS.

### IV. COURSE OF ACTION TAKEN

Signature of Supervisor _____

I have read and understood the above warning and acknowledge that I have received a copy of this notice.

Employee Signature __REFUSED TO SIGN__    Date and Time Stamp _____

White — Personnel File;  Yellow — Employee;  Pink — Union

ALLRIGHT PARKING
DIPLOMAT PARKING
KINNEY SYSTEM
MEYERS PARKING
SQUARE INDUSTRIES



Central Parking Corporation

July 13, 2001

Alexander Jones Jr.
2301 Brooks Dr. # 204
Suitland, MD 20746

Dear Mr. Jones,

    Due to operational requirements the full time job positions of maintenance personnel will be eliminated at 1525 and 1325 Wilson Boulevard in Arlington. Effective July 27, 2001, you will be placed on lay off status. You will remain on lay off status for a period not to exceed 8 months unless you accept a position before the end of that period. Please complete Section 1 of the attached Personnel Data Form and return it to the Human Resource Department not later than July 18, 2001. It is your responsibility to inform us of any changes in your address and phone numbers.

    You are required to bring all Central Parking issued uniforms to Human Resource for turn in within 5 days of the effective date of lay off. Failure to turn in all uniforms will result in the total amount for replacements being withheld from your final paycheck. If you accept another position with Central Parking within 5 days of your lay off date uniforms are not required to be turn in.

    There is a new job posting every Monday. For the first month of your layoff, you will receive one call every Monday to inform you of the job openings. After that, it is your responsibility to contact us by phone or in person. To bid on a position you must come by the Human Resource Department at the Watergate Offices, 2551 Virginia Ave., NW, Washington, DC. You can contact Human Resources at (202) 333-4828 ext. 221. You can also fax the bid sheet to (202) 338-7350.

    The company will contact you one time regarding a position for which you are the most senior employee who is qualified. You will have five business days to respond after which you forfeit your right to the position.

Sincerely,

James I. McKnight
Employee Relations Manager

Cc: Local 27
    Personnel File



CPC
LISTED
NYSE.    1133 20th Street, N.W., Suite 250 • Washington, D.C. 20036 • Ph 202-496-4200 • Fax 202-496-4201

# SEYFARTH SHAW
ATTORNEYS

815 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006-4004

202-463-2400

fax 202-828-5393

www.seyfarth.com

Writer's direct phone
(202) 828-5338

Writer's e-mail
scohen@dc.seyfarth.com

July 22, 2002

**BY HAND**

JuanCarlos Hunt, Esq.
Equal Employment Opportunity Commission
1400 L Street, N.W.
Suite 200
Washington, D.C. 20005

Re:   Alexander Jones v. Central Parking Corporation, Charge No. 100 A1 0823

Dear Mr. Hunt:

    I have enclosed the original declaration of Tanya Peters, a copy of which I faxed to you on Thursday, July 18, 2002. Please contact me if you have any questions.

                            Sincerely,

                            SEYFARTH SHAW

                            By *[signature]*
                            Susan J. Cohen

Attachment

cc:   Sharriff Thompson, EEOC

DC1 30081997v1

BRUSSELS · WASHINGTON, D.C. · SAN FRANCISCO · SACRAMENTO · NEW YORK · LOS ANGELES · HOUSTON · CHICAGO · BOSTON · ATLANTA



Sharriff Thompson, Investigator
July 12, 2002
Page 4

was already assigned, so that he could work full-time as a maintenance employee. Alternatively, Central informed Charging Party that he could assume a full-time parking attendant position. It was Charging Party who declined these opportunities. As a result, Central laid off Charging Party. This decision was based solely on legitimate business concerns and Charging Party's rejection of employment opportunities that Central made available to him.

There is simply no basis to conclude that Central's reason for laying off Charging Party is false or that the real reason was Charging Party's national origin and/or because Central allegedly regarded him as disabled. Notably, the charge is completely devoid of any specific allegations of comments or conduct demonstrating a bias based on Charging Party's national origin or alleged disability.

In fact, the evidence undercuts any claim by Charging Party that Central discriminated against him. As discussed above, Central offered Charging Party several opportunities to continue working for Central before his layoff became effective. This is hardly the kind of treatment one would expect of persons with bias against Charging Party because of his national origin or because it regarded him as being disabled. It was Charging Party's own decision to decline the opportunities presented to him by Central that resulted in his ultimate layoff.

Finally, it defies logic to suggest that the individuals involved in Charging Party's layoff discriminated against him because he is American given that Ms. Peters and Mr. McKnight – like Charging Party – were African-American.[5] Similarly, the fact that the individual who ultimately took over Charging Party's responsibilities was also African-American seriously undermines Charging Party's claim that Central's motive in laying him off was because of his national origin.

In sum, Charging Party has presented no allegations that would even remotely support an inference that Central discriminated against him based on his national origin or because it allegedly regarded him as being disabled. Rather, Central's positive treatment of Charging Party dispels such an inference. There is no basis upon which to conclude that Central's

---

[5]    See Gray v. Frito-Lay, Inc., 35 Fair Empl. Prac. Cases (BNA) 598 (S.D. Miss. 1982) (fact that supervisor involved in decision to discipline was also black "further negates any inference of racial discrimination").

DC1 30081436v1



Sharriff Thompson, Investigator  *after my injury on 11.00*
July 12, 2002
Page 3

*Mr Brown was working my locations at Locs #5044 #5410 #5440 and 5601. They lost two and mr Brown was given the other two and the locations #5 and 5437 By Manager Emabet*

Contrary to Charging Party's allegation in his charge, Central did not replace Charging Party with another employee the week before he was laid off. In fact, after Charging Party rejected Central's offer to perform the maintenance duties for locations 5 and 5437 on a part-time basis, Central posted the open part-time position. However, Central received no applications for this part-time position. Central then asked full-time maintenance employee Michael Brown (African-American) to assume the maintenance responsibilities for locations 5 and 5437, in addition to the two locations to which he was already assigned. As of approximately the end of August 2001, Mr. Brown agreed to take on Charging Party's former locations. To date, Mr. Brown continues to perform maintenance duties for locations 5 and 5437, in addition to his other locations.

## THE CHARGE IS WITHOUT MERIT AND SHOULD BE DISMISSED

Charging Party's charge of discrimination should be dismissed because Central's reasons for laying off Charging Party were legitimate and nondiscriminatory and were not a pretext for national origin or disability discrimination.[3] As discussed above, during Charging Party's absence from work during the period of June 18, 2001 to July 1, 2001, another maintenance employee was able to satisfactorily complete Charging Party's maintenance job functions in a mere two hours per day. Thus, it became clear to the Project Manager who oversaw the parking facilities to which Charging Party was assigned that the operational needs of these facilities did not justify employing a full-time employee.[4]

Rather than treating Charging Party in a manner that suggests discriminatory bias, Central treated Charging Party quite favorably. Upon determining that Charging Party's locations did not require a full-time maintenance employee, Central offered to allow Charging Party to continue working at those locations on a part-time basis. When Charging Party said that he was not interested in working part-time, Central provided Charging Party with several options to allow him to continue full-time employment with Central. For example, Central offered to assign Charging Party to another parking facility, in addition to the two to which he

---

[3]   See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

[4]   From approximately August 2001 to the present, another maintenance employee has performed the maintenance duties for locations 5 and 5437, in addition to performing such duties for two other locations. This further demonstrates that a full-time position dedicated to locations 5 and 5437 was not justified by business needs.

DC1 30081436v1


SEYFARTH
ATTORNEYS SHAW

Sharriff Thompson, Investigator
July 12, 2002
Page 2

time period at issue in the charge, Charging Party had responsibility for only two parking facilities – location numbers 5 and 5437.[2]

On approximately April 12, 2001, Charging Party filed a workers' compensation claim alleging that he developed a hernia as a result of on-the-job lifting in November 2000. (See Attachment A.) Charging Party was out of work for surgery and recovery from June 18 through July 1, 2001. (See Attachment B.) During Charging Party's leave of absence, another full-time maintenance employee, Jaime Herrerra, was asked to cover Charging Party's maintenance responsibilities. Mr. Herrerra was able to satisfactorily complete Charging Party's maintenance duties for locations 5 and 5437 in approximately two hours per day.

Based on Mr. Herrerra's ability to complete the maintenance duties of locations 5 and 5437 in well under eight hours per day, Project Manager Getaneh Asrat determined that the operational needs of these locations did not justify employing a full-time maintenance person. As a result, Mr. Asrat decided to make the maintenance position for locations 5 and 5437 into a part-time position. Mr. Asrat and Area Manager Art Alabin informed Charging Party that his position was going to become a part-time position. Charging Party said that he was not interested in a part-time position. [Handwritten annotation: Mr. Asrat and Art Alaban alway was aware that #5 and #5437 took only a little more then one hour to clean. I was responsibale more Loction on majority of the time. Look at pay stub DATE 1997. Look at warning notice]

In an effort to allow Charging Party to continue full-time employment with Central, Employee Relations Manager James McKnight (African-American), Assistant Director of Human Resources Tanya Peters (African-American) and Mr. Alabin met with Charging Party and offered him other opportunities. For example, they offered to assign Charging Party another parking location, in addition to locations 5 and 5437, so that he could continue working full-time as a maintenance employee. Alternatively, they stated that Charging Party could transfer to a full-time parking attendant position. Charging Party declined these opportunities and indicated that he would prefer to devote his time to handling some personal matters. Thus, by letter dated July 13, 2001, Charging Party was placed on layoff status effective July 27, 2001. (See Attachment C.)

---

[2] Charging Party previously had been assigned as many as six parking locations. Over time, as locations to which Charging Party had been assigned went under construction or were transferred to different management, the number of locations to which Charging Party was assigned decreased.

DC1 30081436v1

# HENRICHSEN **SIEGEL**

1850 M Street NW, Suite 250
Washington, DC 20036
202.293.7766 *telephone*
202.293.7778 *facsimile*

October 4, 2001

*via first class mail*

Alexander Jones
2301 Brooks Dr.
#204
Suitland, MD 20746

Dear Mr. Jones:

You previously contacted this civil rights firm seeking legal assistance. Unfortunately, we are not in a position to offer you legal assistance or advice at this time. Accordingly, we will consider this matter closed. I wish you the best of luck in handling your situation.

If you, or someone you know, would like any assistance in the future, especially in the areas of employment, disability rights and civil rights, please give us a call. Thank you.

Sincerely,

Eric L. Siegel

ATTORNEYS AT LAW WITH OFFICES IN THE DISTRICT OF COLUMBIA AND FLORIDA
*A Professional Limited Liability Company*



# WASHINGTON LAWYERS' COMMITTEE
# FOR CIVIL RIGHTS & URBAN AFFAIRS

October 23, 2003

Alexander Jones
4324 Sheldon Ave
Temple Hills, MD 20748

Dear Mr. Jones:

This letter is to confirm the substance of our conversation regarding your claim against the Central Parking Corporation.

I write to confirm that, as we discussed, the Washington Lawyers' Committee for Civil Rights and Urban Affairs will not be able to assist you with your complaint.

Please understand that the Washington Lawyers' Committee is a non-profit organization that operates with a very small staff and limited resources. We often have to make difficult choices, like this one, that are necessary to appropriately allocate our limited resources.

Enclosed you will find a list of resources that may be of use to you in seeking further assistance. I am sorry we cannot help you further, and I wish you luck in resolving your dispute through other means.

Sincerely,

Rachel McMichael
Intake Paralegal, EEO Project

Enclosure(s)



# COMMONWEALTH OF VIRGINIA
Virginia Employment Commission
703 East Main Street

Dolores A. Esser
Commissioner

P.O. Box 1358
Richmond, Virginia 23218

ALEXANDER JONES JR
2301 BROOKS DR APT 204
SUITLAND        MD 20746-1002

### IMPORTANT NOTICE CONCERNING YOUR CLAIM
### FOR UNEMPLOYMENT BENEFITS

In order to obtain information by phone concerning your claim for unemployment benefits, you must be able to provide your Personal Identification Number (PIN).

Effective 09/17/02 Your PIN is 709552.

When calling your VEC office for claim information, you must give only the first four digits of your PIN. When using the VEC voice response system to obtain information or claim benefits, you must provide ALL six digits.

Please safeguard your PIN and do not give it to anyone else. If you lose or forget your PIN or believe someone else is using it, call or visit your local office immediately.

**Remember, if you want information on your claim, such as the date of your last check, you may get it by simply dialing toll-free 1-(800)-897-5630. In the Richmond area call (804)-775-8380.**

BP4941                    An Equal Opportunity Service Provider                  (R  3/02)



**COMPTROLLER
*of* MARYLAND**
*Serving the People*

William Donald Schaefer
*Comptroller*

Linda L. Tanton
*Director
Compliance Division*

October 28, 2003
**Notice of Hearing**

Alexander Jones, Jr.
4324 Sheldon Avenue
Temple Hills, Maryland 20748

| | |
|---|---|
| **Taxpayer:** | **Jones, Alexander Jr.** |
| **S.S. No.:** | **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** |
| **Tax Year:** | **2001** |
| **Tracking No.:** | **12458** |

Dear Mr. Jones:

Your appeal from an assessment or a denial of claim for refund has been received. A hearing has been scheduled as required by §13-508(c) of the Tax-General Article. If you fail to appear for this hearing, the assessment or denial will become final and non-appealable.

| | |
|---|---|
| **Hearing Date:** | Tuesday, December 2, 2003 |
| **Hearing Time:** | 9:45 a.m. |
| **Hearing Officer:** | Wallace A. Eddleman, Esquire |
| **Location:** | 301 West Preston Street, Room 315
Baltimore, Maryland 21201-2383 |

The enclosed tax tip describes the informal hearing process. The hearing may be postponed for good cause if a written request is made **at least five (5) business days** before the scheduled hearing date.

Please bring to the hearing all documentation or other information you feel is pertinent to your appeal. You may forward the information directly to the hearing officer before the hearing date if you choose. You may also bring relevant witnesses to the hearing to testify.

If you have any questions, please feel free to contact me.

Very truly yours,

*Gail T. Stawski*

Gail T. Stawski
Management Associate
(410) 767-4635

Enclosure
cc: K. Heskett

Alexander Jones, Jr.
February 9 2004
Page 2


Representing yourself at the hearing, you were not able to dispute the fact that you filed a balance due return. However, you advised that your employer, Central Parking System Washington, DC, failed to withhold Maryland tax from you for 2001, even though they had always withheld Maryland tax from you in the past. You provided copies of pay stubs from 1999 and 2000 as proof that your employer was withholding Maryland tax. You requested that the Comptroller investigate the withholding practices of Central Parking System Washington, DC.

You were advised at the hearing the Comptroller cannot credit you for withholding tax that was not collected and remitted by your employer. The tax liability not in dispute, you were advised that a final determination affirming the assessment of tax and interest would be issued. However, I agreed to waive the penalty because it appears that it was your employer who failed to withhold Maryland tax on your behalf. You were also advised that absent a timely appeal of this determination to the Maryland Tax Court, your case will be forwarded to the Comptroller's Collection Section. Finally, I agreed to request the Comptroller's Field Audit Section to investigate the withholding practices of Central Parking System Washington, DC.

Accordingly, the assessment of tax and interest is affirmed. Penalty of $37.01 is waived.

If you are dissatisfied with this final determination, AN APPEAL MUST BE TIMELY FILED IN THE MARYLAND TAX COURT within 30 days of the date shown above. DO NOT FILE AN APPEAL WITH THE COMPTROLLER OF MARYLAND. If you do not appeal in accordance with the procedures of the MARYLAND TAX COURT within 30 days, this final determination will become an absolute liability, which must be promptly paid, and the payment may not be refunded for any reason. Appropriate forms for use in filing appeals may be obtained from the MARYLAND TAX COURT at 301 West Preston Street, Suite 1513, Baltimore, Maryland 21201, telephone number (410) 767-4830.

Wallace A. Eddleman, Esquire
Hearing Officer
(410) 767-1568

EEOC Form 161-B (10/96)                U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To:
Alexander Jones
2301 Brooks Drive Apt. 204
Suitland, MD 20746

From:
U.S. Equal Employment Opportunity Commission
Washington Field Office
1400 L. Street, N.W. Suite 200
Washington, D.C. 20005

[ ]    On behalf of person(s) aggrieved whose identity is
       CONFIDENTIAL (29 CFR § 1601.7(a))

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 100-2001-00823 | Javier Chacon, Acting Director | (202) 275-7377 |

**NOTICE TO THE PERSON AGGRIEVED:**   (See also the additional information attached to this form.)

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your suit under Title VII or the ADA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[X]    More than 180 days have passed since the filing of this charge.

[ ]    Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[ ]    The EEOC is terminating its processing of this charge.

[ ]    The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ]    The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]    The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required). EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit based this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Javier Chacon, Acting Director

OCT 17 2003

(Date Mailed)

Enclosure(s)

cc:
Christopher A. Weals
Seyfarth Shaw
Attorneys at Law
815 Connecticut Ave., N.W.
Suite 500
Washington, D.C. 20006-4004

Alexander Jones Jr
4324 Sheldon Ave.
Temple Hills, MD 20748
Tel: 301 316-6656

April 4, 2005

To: Cherise, H R Manager
Re: Job Issue
   OHA NO. 04-433
   OWC No. S96807

Dear Cherise

   This Letter is an attempt to collect back pay after having my work load reduced and being layed off. My work load was reduced appox. April, 2001 after I filed for workers comp. Manager Emmabet told me not to return to her locations. I had six locations from appox. 5-2000 until April, 2001. #5044 #5410 # 5440 #5610# 5 and 5437. After Manager Emmabet told me not to return I was left with #5 and #5437. In June 01. I had a hernia operation. Two weeks after I returned to work I was layed off. Manager Getaneh Asrat stated that locations #5 and #5437 no longer require the full-time positon. The Manager stated that he discoverd this while I was recovering from my operation. Getaneh Asrat was the Manager At location #5 and #5437 when I wokked all six locations. I had only worked #5 and 5437 by thier self for appox. four months in my four years with Central Parking, I all ways had more then two locations. The only other oppertunity givenme at this time was a part-time position in VA that I had to turn down for transportation reson. I had a pay rate issue, in 2000 when I frist recieved Emmabets locations I asked for a doller raise from $6.65 to $7.65, I had been under paid .15¢ a hour for the last two years. Management seed no and I refused to do the work. I was given a verble and then a written notice and told that I could not turn down or refuse location I could be fired. I did the locations until April 2001, I was given a .60¢ raise. I am out $52,220 in back pay, I am seeking the max amount allowed in punitive if this matter is not resoved in ten days from the date of this letter. I will take further action..
Thank you for your attention to this matter.